AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

JUN 2 5 2019

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 19MJ2659 |
| GPS Tracking Device with SIM Card IMEI number 351608083560834 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Pearlene Hill

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Pearlene Hill, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 25, 2019

*Judge's signature*

City and state: San Diego, CA    Hon. Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Pearlene Hill, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search a GPS Tracking Device with SIM Card IMEI number 351608083560834, as described in Attachment A (the "**Target Device**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960 and 963, as more particularly described in Attachment B. This search supports an investigation and prosecution of Jose Manuel MONTERREY ("MONTERREY"), who is charged with committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was found attached to a 2005 Nissan Altima that MONTERREY drove into the United States on February 26, 2019 and that was found to contain methamphetamine. The **Target Device** is currently in the possession of Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

3. Based on the information below, there is probable cause to believe that a search of **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

///

///

## EXPERIENCE AND TRAINING

5. I am a Special Agent with HSI, which is a component agency of the DHS. I have been employed as an HSI Special Agent since May 2018. I am currently assigned to the HSI DSAC San Ysidro field office in San Diego, California. My job duties are to investigate the smuggling of controlled substances into the U.S. I have been cross-designated by the U.S. Drug Enforcement Administration (DEA) to conduct narcotics investigations and enforce provisions of the Federal Controlled Substances Act, pursuant to Title 21 of the United States Code. Prior to employment with HSI, I was employed as a Special Agent with the U.S. Secret Service (USSS), from August 2017 until May 2018; as a Uniformed Division Officer with the U.S. Secret Service (USSS), from September 2014 until August 2017; and as a Police Officer employed by the Chapel Hill Police Department (CHPD), from September 2008 until September 2014.

6. Prior to becoming an HSI Special Agent, I graduated with honors with a Master of Science degree in Criminal Justice specializing in Homeland Security from Saint Joseph's University. I received a Bachelor of Arts Degree in Psychology from the University of North Carolina at Chapel Hill and I served in the Army National Guard as a brigade senior movement non-commissioned officer.

7. As a HSI Special Agent, my formal training consisted of six months of residential instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training related to narcotics and dangerous drugs. I also learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and the use of electronic evidence. I have participated in training programs related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine, and heroin. I have also received training in the methods used by narcotics traffickers to import, distribute, package and conceal controlled substances. I have participated in several narcotics investigations and executed arrests for drug-related offenses, including possession with the intent to distribute, transportation, and the importation of controlled substances. Additionally, through the

course of my duties as a Special Agent, I have discussed narcotics smuggling and trafficking with other experienced narcotics investigators and received informal training regarding illegal drug trends and methods of operation for multi-kilogram drug smuggling, trafficking, and dealing in the San Diego area.

8. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

  a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

  b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

  c. Drug smugglers and traffickers will use GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data on GSM cellular devices. Depending on the device, such data can include user identity, location, phone numbers, network authorization data, personal security keys, and IP addresses. Much of the evidence generated by a smuggler's use of a GPS tracker would likely be stored on any SIM Card that has been utilized in connection with that device.

10. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that GPS devices can and often do contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS Devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS

3

device. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of GPS devices sometimes yields evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

    b. tending to identify coconspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

    c. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points; and/or

    d. tending to identify the user of, or persons with control over or access to, the GPS device.

11. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months. This planning sometimes includes the use of GPS devices.

### FACTS SUPPORTING PROBABLE CAUSE

12. On February 26, 2019, at approximately 3:15 a.m., MONTERREY, a Mexican citizen, applied for entry into the United States from Mexico through the Otay Mesa, California, Port of Entry ("POE"). MONTERREY was the driver and sole occupant of a black 2005 Nissan Altima with California license plate 7LFR104. In primary inspection, MONTERREY presented his Legal Permanent Resident Card to the Customs

4

1  and Border Protection Officer ("CBPO") and said he was going to Vista, California.
2  MONTERREY told the CBPO that the vehicle belonged to his employer, but he was unable
3  to provide his employer's name. Upon inspection, the CBPO noticed the spare tire was
4  very heavy, and sent MONTERREY and the vehicle to secondary inspection.

5      13. In secondary inspection, vehicle x-ray machines screened the vehicle and
6  observed anomalies inside the vehicle's rear quarter panels, rear doors, and spare tire. A
7  Human and Narcotics Detector Dog alerted to the presence of a trained odor emanating
8  from the vehicle's interior trunk area. CBPOs then found nine packages inside the driver
9  side rear door, eight packages in the driver side rear quarter panel, eighteen packages inside
10 the spare tire, eleven packages in the passenger side rear quarter panel, nine packages inside
11 the passenger side rear door, and twenty packages inside the gas tank of the vehicle. The
12 75 total packages weighed approximately 38.92 kilograms (85.80 pounds), and
13 preliminarily tested positive for methamphetamine.

14     14. Officers placed MONTERREY under arrest for violating Title 21 United
15 States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance.

16     15. The **Target Device** was found wired into the circuit panel inside
17 MONTERREY's Nissan Altima.

18     16. Following his arrest, MONTERREY waived his *Miranda* rights and elected
19 to make a statement. MONTERREY told agents he responded to an advertisement about
20 three weeks prior to his arrest. Through the advertisement, he was offered a job transporting
21 people. He was told he would be at Palomar Station in Chula Vista around 5:00 a.m. every
22 morning, and would wait for instructions to transport people when the boss told him.
23 MONTERREY stated that he began the job and waited for people at the Palomar Station
24 on numerous occasions. However, MONTERREY was never told to transport people. On
25 several occasions in the week prior to his arrest, MONTERREY was instructed to leave
26 the car at a Jack in the Box, leave the keys in the vehicle with the vehicle unlocked, walk
27 across into Tijuana, and to return the next day. On the attempted entry that lead to his arrest,
28 MONTERREY said the gas tank was full, which was unusual. Throughout his

"employment," MONTERREY never transported people. MONTERREY denied knowledge of the drugs.

17. Based upon my experience and investigation in this case, I believe that MONTERREY, as well as other persons as yet unknown, were involved in the importation of narcotics. Based upon my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe MONTERREY and others used the **Target Device** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United States. There is also probable cause to believe that electronic records, including location data and telephone numbers or identifying information for individuals accessing the **Target Device** directly or remotely through phones and/or computers are stored in the memory of the **Target Device**, which may identify other persons involved in drug-trafficking activities.

18. I know that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as MONTERREY will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given MONTERREY' post-arrest statement that he has been doing this job for about three weeks, and given that crossing data indicates MONTERREY started crossing in the vehicle on February 8, 2019, I respectfully request permission to search **Target Device** for data beginning on January 8, 2019, up to and including his arrest date of February 26, 2019.

//

## METHODOLOGY

19. It is not possible to determine, merely by knowing a GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS devices today can have functions such as full address books and can be mini-computers. An increasing number of GPS devices now allow users to access them remotely with computers or with a cellular phone and remotely erase all of the data contained on the device. For that reason, the device may only be powered in a secure environment. Many GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS device models using forensic hardware and software. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

22. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that the **Target Device** was used to facilitate the offense of importation of controlled substances. The **Target Device** was likely used to facilitate the offense by transmitting

and storing data, which constitutes evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

23. Because **Target Device** was seized immediately inside the vehicle during the investigation of MONTERREY's smuggling activities and has been securely stored, there is also probable cause to believe that evidence of the illegal activities committed by MONTERREY, as described in Attachment B, continues to exist on the **Target Device**.

24. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Pearlene Hill
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 25 day of June, 2019.

The Honorable Bernard G. Skomal
United States Magistrate Judge

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The property is to be searched is the GPS Tracking Device with a SIM Card with IMEI number 351608083560834, that was found in the circuit panel of 2005 Nissan Altima bearing California license plate 7LFR104 that MONTERREY drove into the United States on February 26, 2019 (the **"Target Device"**). The **Target Device** is currently in the possession of Homeland Security Investigations, which is located at 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below, between the dates of January 8, 2019 and February 26, 2019. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be location data and identifying information of individuals accessing the device, including telephone numbers and identifying information for phones and/or computers remotely accessing the device:

    a.    tending to indicate efforts to import methamphetamine or some other controlled substances from Mexico into the United States;

    b.    tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine or some other controlled substances from Mexico into the United States;

    c.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substances from Mexico into the United States; and/or

    d.    tending to identify the user of, or persons with control over or access to, the **Target Device**;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.